IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

FABIAN PEREZ PORTALES,
     Petitioner,
     v.                                                Civil No. 3:26cv508 (DJN)

JEFFREY CRAWFORD, *et al.*,
     Respondents.

## MEMORANDUM OPINION

Petitioner Fabian Perez Portales ("Petitioner"), a federal detainee proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1 ("§ 2241 Petition")). In his § 2241 Petition, Petitioner asserted that he was not subject to mandatory detention. (ECF No. 1 at 6.) Petitioner argued that he was being detained pursuant to 8 U.S.C. § 1226 and therefore was entitled to a bond hearing, but had been denied that bond hearing. (*Id.*) Accordingly, by Memorandum Order entered on June 8, 2026, the Court directed the Respondents to file either a Notice indicating that the factual and legal issues presented in the § 2241 Petition do not differ in any material fashion from those presented in *Ortega Miranda v. Bondi*, No. 3:25CV769, 2026 WL 287179 (E.D. Va. Feb. 3, 2026), or an explanation as to why material factual or legal differences between *Ortega Miranda* and the § 2241 Petition exist. (ECF No. 3 at 1–2.) Respondents have filed an Opposition. (ECF No. 5 ("Opposition").) Petitioner has not filed a reply. For the reasons that follow, Petitioner's § 2241 Petition will be DENIED.

## I.    Factual Background

The § 2241 Petition contains very little background information. Accordingly, the Court must rely on the factual background provided by Respondents. According to Respondents:

4.     Petitioner is a 47-year-old native and citizen of Honduras.

5.     On August 20, 2000, Perez Portales was encountered by officers of the Immigration and Naturalization Service, ("INS") at the Antelope County Jail in Des Moines, Iowa. After a brief interview, it was determined that Petitioner was a citizen of Honduras who unlawfully entered the United States without being admitted or paroled. Petitioner was served with a Notice to Appear ("NTA") charging him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an alien being present without admission or parole.

6.     On November 1, 2000, an Immigration Judge out of Houston, Texas ordered Petitioner removed to Honduras.

7.     On January 25, 2001, Petitioner was removed from [the] United States to Honduras.

8.     On July 29, 2006, [Customs and Border Protection ("CBP")] encountered Petitioner in or near Laredo, Texas. After a brief interview, CBP determined Petitioner was a citizen of Honduras who unlawfully entered the United States without being admitted or paroled. Petitioner expressed no fear of return to Honduras. Upon further review of Petitioner's immigration history, CBP determined he was subject to a final order of removal.

9.     On July 30, 2006, Petitioner was served a Form I-871, Reinstatement of Prior Order.

10.    On August 7, 2006, Petitioner was removed from the United States to Honduras.

11.    On February 16, 2009, [Enforcement and Removal Operations ("ERO")] encountered Petitioner in or near Lake Charles, Louisiana. After a brief interview, ERO determined Petitioner was a citizen of Honduras who unlawfully entered the United States without being admitted or paroled. Petitioner expressed no fear of return to Honduras. Upon further review of Petitioner's immigration history, ERO determined he was subject to a final order of removal. Petitioner was served a Form I-871, Reinstatement of Prior Order.

12.    On March 26, 2009, Petitioner was removed from the United States to Honduras.

13.    On March 6, 2014, ERO encountered Petitioner in or near Alabaster, Alabama. After a brief interview, ERO determined Petitioner was a citizen of Honduras who unlawfully entered the United States without being admitted or paroled. Petitioner expressed no fear of return to Honduras. Upon further review of Petitioner's immigration history, ERO determined he was subject to a final order of removal. Petitioner was served a Form I-871, Reinstatement of Prior Order.

14.    On April 4, 2014, Petitioner was removed from the United States to Honduras.

15.    On February 18, 2019, CBP encountered Petitioner and his minor child in or near Eagle Pass, Texas. After a brief interview, CBP determined Petitioner was a citizen of Honduras with no legal right to enter or remain in the United States. Upon further review of Petitioner's immigration history, CBP determined he was subject to a final order of removal. Petitioner was served a Form I-871, Reinstatement of Prior Order.

16.     On February 27, 2019, Petitioner was found to have a positive reasonable fear by U.S. Citizenship and Immigration Services ("USCIS") and was referred to an Immigration Judge for Withholding Only Proceedings.

17.     On March 2, 2019, Petitioner was released on an order of supervision ("OSUP") and his minor child released on his own recognizance.

18.     On January 23, 2020, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with the Immigration Court in his Withholding Only Proceedings.

19.     On August 9, 2024, Petitioner appeared for an Individual Hearing before an Immigration Judge in Los Angeles, California, on the merits of his application for protection.

20.     On October 29, 2024, the Immigration Judge issued a written decision denying all applications for protection.

21.     On November 8, 2024, Petitioner filed a Notice of Appeal with the Board of Immigration Appeals [("BIA")].

22.     On May 14, 2026, Petitioner reported to the ["U.S. Immigration and Customs Enforcement ("ICE")] Washington Field Office and after reviewing his file, ERO determined that his circumstances no longer rendered his release appropriate. Specifically, the child in Petitioner's custody upon entry had reached the age of majority.[1] [U.S. Department of Homeland Security ("DHS")] issued Petitioner a Notice of Revocation of Release and placed Petitioner into civil immigration custody based on the new circumstances. On the same day, Petitioner was given an informal review to respond to the reasons for the revocation of the Order of Supervision (i.e., that his child had reached the age of majority).

23.     Petitioner's case remains pending before the [BIA]. DHS filed Form I-830, Notice of Alien Address with the BIA, who [has] acknowledged Petitioner is now detained.

(ECF No. 5-1 ¶¶ 4–23.)

## II.     Standard of Review

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). After receiving the Petition and

---

[1]     As of May 14, 2026, Petitioner's child was twenty years old. (ECF No. 5-2, at 1–2.)

any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### III.    Analysis

### A.    Petitioner is Not Entitled to a Bond Hearing

On March 13, 2026, Petitioner filed his § 2241 Petition, claiming that he has been improperly denied a bond hearing and should not be subject to mandatory detention. (ECF No. 1 at 6.) Petitioner argued that he was being detained pursuant to 8 U.S.C. § 1226 and therefore was entitled to a bond hearing. (*Id.*)

However, it appears that Petitioner is subject to a reinstated Final Order of Removal[2] and is now detained pursuant to 8 U.S.C. § 1231. "Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall be removed 'within a period of 90 days.' The alien '*shall*' be detained during the removal period." *Banoub v. Crawford*, 819 F. Supp. 3d 477, 486 (E.D. Va. 2025) (internal citations and footnote omitted) (quoting 8 U.S.C. § 1231(a)(1)(A)). To the extent that Petitioner argues that he is entitled to a bond hearing, that assertion lacks merit. For

---

[2]    8 U.S.C. § 1231(a)(5) provides that:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . under an order of removal, the prior order of removal is reinstated from its original date and *is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at *any time* after the reentry.

8 U.S.C. § 1231(a)(5). "An immigration officer simply obtains the alien's prior order of removal, confirms the alien's identity, and determines whether the alien's reentry was unauthorized." *Martinez v. Garland*, 86 F.4th 561, 564 (4th Cir. 2023) (citing 8 C.F.R. § 241.8(a)(1)–(3)), *vacated on other grounds by Martinez v. Bondi*, 145 S.Ct. 2836 (2025). After receiving written notice of the officer's determination, the alien can contest it, but if the officer "declines to reconsider his determination, he reinstates the prior removal order" and "the alien shall be removed." *Id.* (citations omitted). The alien is then removed with "no right to a hearing before an immigration judge." *Id.* at 564–65 (citation omitted).

4

the foreseeable future, Petitioner's detention is mandatory. *See id.* (quoting 8 U.S.C. § 1231(a)(1)(A)).

## B.      Prolonged Detention Under § 1231

To the extent that Petitioner argues that his prolonged detention in ICE custody violates his constitutional rights (ECF No. 1, at 7–8), that argument also lacks merit.

8 U.S.C. § 1231 governs the detention and removal of aliens subject to final orders of removal.[3] Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall be removed "within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The alien "*shall*" be detained during the removal period. § 1231(a)(2)(A).

An alien not removed during the removal period may be released or detained. Under 8 U.S.C. § 1231(a)(3), aliens who do not leave the United States or are not removed during the removal period "*shall* be subject to supervision" pending their removal. 8 U.S.C. § 1231(a)(3) (emphasis added). But § 1231(a)(6) provides that certain noncitizens, including those "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). That

---

[3]      8 U.S.C. § 1231 provides, in pertinent part:

**(a) Detention, release, and removal of aliens ordered removed**

**(1) Removal period**
**(A) In general**
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
[ . . . ]
**(2) Detention**
**(A) In general**
During the removal period, the Attorney General shall detain the alien[.]

8 U.S.C. § 1231(a)(1)–(2).

is, § 1231(a)(6) permits the continued detention of an alien after the removal period.

Section 1231 "does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Castaneda v. Perry*, 95 F.4th 750, 755–56 (4th Cir. 2024). But the United States Supreme Court addressed this issue in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court considered whether § 1231(a)(6) authorizes the indefinite detention of an alien subject to a removal order, or whether the statute permits detention only for a period reasonably necessary to secure the alien's removal. *Zadvydas*, 533 U.S. at 692. Recognizing the "serious constitutional problem arising out of a statute that . . . permits an indefinite, perhaps permanent, deprivation of human liberty," the *Zadvydas* Court "construe[d] [§ 1231] to contain an implicit 'reasonable time' limitation." *Id.* at 682, 692. This period, the Supreme Court determined, is presumptively six months. *Id.* at 701.

The six-month presumption "does not mean that every alien not removed must be released after six months." *Id.* But if an alien is detained beyond six months, the reasonable time presumption no longer exists. At that point, "if 'the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing' or release the alien." *Castaneda*, 95 F.4th at 756 (quoting *Zadvydas*, 533 U.S. at 701); *see also Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014) (explaining the burden-shifting test established in *Zadvydas* to assess the constitutionality of detention following the presumptively reasonable six-month period).

Here, Petitioner has only been detained on the reinstated order of removal since May 14, 2026, which is only two months, and far less than the presumptively reasonable six-month

period. *See Zadvydas*, 533 U.S. at 701.[4]  Additionally, Petitioner has not met his burden to show that there is not significant likelihood of removal in the reasonably foreseeable future.  To the contrary, the record reflects that Petitioner has been removed to Honduras at least four times previously and his removal occurred expeditiously each time.  Respondents explain that the only impediment to his removal is his pending appeal with the BIA of the denial of his application for withholding of removal.  However, "ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable." *Castaneda*, 95 F.4th at 758.  Because Petitioner has not met his burden to show that his ongoing detention violates the Constitution, the § 2241 Petition will be DENIED.

The Court will VACATE the portion of the Memorandum Order entered on March 25, 2026, which prohibited Respondents from removing or transferring Petitioner from this District.

### IV.  Conclusion

The § 2241 Petition will be DENIED.  The Court will VACATE the portion of the Memorandum Order entered on June 8, 2026, which prohibited Respondents from removing or transferring Petitioner from this District.

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Petitioner.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  July 16, 2026

---

[4]  Respondents explain that Petitioner's pending appeal of the denial of his application for withholding of removal does not affect the finality of his reinstated order of removal. (*See* ECF No. 5 at 5 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021)).)